Michael D. Mortenson, Cal. Bar No. 247758
  mmortenson@mortensontaggart.com
Craig A. Taggart, Cal. Bar No. 239168
  ctaggart@mortensontaggart.com
MORTENSON TAGGART LLP
300 Spectrum Center Dr., Suite 1100
Irvine, CA 92618
Telephone: (949) 774-2224
Facsimile: (949) 774-2545

Attorneys for Defendant
RIVIAN AUTOMOTIVE, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE, JANE ROE AND JOHN ROE II,<br><br>Plaintiffs and Putative Class Representatives,<br><br>vs.<br><br>RIVIAN AUTOMOTIVE, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 8:20-cv-00998-MWF-ADS<br><br>Hon. Michael W. Fitzgerald<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RIVIAN AUTOMOTIVE, LLC'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>Hearing Date:  September 14, 2020<br>Time:            10:00 a.m.<br>Courtroom:    5A |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ....................................................................................1

II.    STATEMENT OF FACTS.................................................................... 4

    A.    Plaintiffs File Their Frivolous Complaint Against Rivian ................ 4

    B.    Plaintiffs Attempt To Coerce Rivian Into Settling The Lawsuit
        Before The Complaint Is Served By Threatening Rivian And Its
        Counsel............................................................................................. 7

III.   ARGUMENT ..................................................................................... 10

    A.    Legal Standard Under Federal Rule of Civil Procedure 11 ............. 10

    B.    The Court Should Issue Sanctions Because Plaintiffs' Claims Are
        Frivolous ........................................................................................ 11

    C.    Plaintiffs' Complaint Was Presented For An Improper Purpose .... 14

    D.    The Court Should Sanction Plaintiffs and Plaintiffs' Counsel For
        The Amount Of Attorneys' Fees Rivian Expended......................... 17

IV.    CONCLUSION .......................................................................... 17

MEMORANDUM OF POINTS AND AUTHORITIES

1

# <u>TABLE OF AUTHORITIES</u>

2

## Cases

3

4

*Christian v. Mattel, Inc.*,
   286 F.3d 1118 (9th Cir. 2002)............................................................ 10, 11

5

*Gaskell v. Weir*,
   10 F.3d 626 (9th Cir. 1993)...................................................................... 17

6

7

*George v. United States*,
   No. CV1606221 MWFJPRX, 2017 WL 8229294
   (C.D. Cal. Sept. 28, 2017) ...................................................... 11, 12, 13, 14

8

9

*Griffin v. Green Tree Servicing, LLC*,
   No. CV149408MWFVBKX, 2016 WL 6782763
   (C.D. Cal. Feb. 5, 2016) ...................................................................... 13, 14

10

11

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005)................................................................... 11

12

*Hudson v. Moore Bus. Forms, Inc.*,
   836 F.2d 1156 (9th Cir. 1987)................................................................. 15

13

14

*In re Itel Securities Litig.*,
   791 F.2d 672 (9th Cir. 1986)................................................................... 15

15

*Islamic Shura Council of S. Cal. v. FBI*,
   757 F.3d 870 (9th Cir. 2014)................................................................... 10

16

17

*IV Sols., Inc. v. United HealthCare Servs., Inc.*,
   No. CV169598MWFAGRX, 2017 WL 6372488
   (C.D. Cal. Sept. 27, 2017) ................................................................ 12, 13

18

19

*Kramer v. Tribe*,
   156 F.R.D. 96 (D.N.J. 1994)
   *aff'd* 52 F.3d 315 (3d Cir. 1995)............................................................. 15

20

21

*Madrigal v. Hint, Inc.*,
   No. CV1702095VAPJCX, 2017 WL 6940534
   (C.D. Cal. Dec. 14, 2017)....................................................................... 13

22

23

*Mosqueda v. Am. Honda Motor Co., Inc.*,
   No. SACV19839MWF, 2020 WL 1698710
   (C.D. Cal. Mar. 6, 2020) ........................................................................ 13

24

25

*Sneller v. City of Bainbridge Island*,
   606 F.3d 636 (9th Cir. 2010)................................................................... 11

26

*Texas v. United States*,
   523 U.S. 296 (1998) ......................................................................... 12, 14

27

28

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358 (9th Cir. 1990)................................................................ 15

MEMORANDUM OF POINTS AND AUTHORITIES

*Villanueva v. Am. Honda Motor Co.*,
  No. CV191390MWFMAAX, 2019 WL 8112467
  (C.D. Cal. Oct. 10, 2019) ............................................................ 13

*Whitehead v. Food Max of Mississippi, Inc.*,
  332 F.3d 796 (5th Cir. 2003) ...................................................... 15

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) .................................................... 12

*Yagman v. Gen. Motors Co.*,
  No. CV-14-4696-MWF AGRX, 2014 WL 4177295
  (C.D. Cal. Aug. 22, 2014) ............................................................ 12

**Statutes**

Fed. R. Civ. P. 11 ............................................................... 10, 11

**Other Authorities**

Rule 11, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial....................... 15

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3       After complying with the 21-day safe harbor period and Plaintiffs'

4   subsequent refusal to withdraw their Complaint, Rivian Automotive, LLC

5   ("Rivian") respectfully requests that the Court sanction Plaintiffs John Roe, Jane

6   Roe and John Roe II and their counsel for violating Federal Rule of Civil

7   Procedure 11.  Plaintiffs filed their **anonymous** Class Action Complaint against

8   Rivian asserting claims that any competent inquiry would reveal to be frivolous.

9   After filing (but not serving) the Complaint, Plaintiffs attempted to pressure Rivian

10  into settling their frivolous claims by making various threats to Rivian and

11  Rivian's counsel.  Plaintiffs have violated Federal Rule of Civil Procedure 11 in

12  two different, but equally damning ways.

13      <u>First</u>, Plaintiffs' claims are not warranted by existing law or facts, and any

14  competent inquiry would have concluded that the claims are frivolous.

15      Plaintiffs' fraud claim is based on Rivian's purported failure to disclose

16  undefined defects in **prototype** test vehicles at the time two of the Plaintiffs made

17  deposits to hold their place in line for the opportunity to purchase vehicles once

18  they are developed and released for sale.  As detailed in Rivian's Motion to

19  Dismiss, Plaintiffs' fraud claim is defective because Plaintiffs lack standing, the

20  claim is not ripe for adjudication, and Plaintiffs do not come close to satisfying

21  Federal Rule of Civil Procedure 9(b)'s pleading requirements.  Indeed, Rivian has

22  not even built or released any vehicles for sale, it has not sold any vehicle to

23  Plaintiffs, and the prototype vehicles that Plaintiffs complain about will never be

24  sold to the public.  Further, John Roe and Jane Roe's deposits are **fully**

25  **refundable**, yet they have never asked for a refund at any point in time.  Moreover,

26  John Roe II has no claim whatsoever because he never placed a deposit.

27      Plaintiffs' second claim for injunctive relief to stay the initial public offering

28  is equally defective.  Plaintiffs' second claim seeks to enjoin Rivian's hypothetical,

unplanned initial public offering based on allegations that Rivian might not disclose some hypothetical defect at the time of Rivian's initial public offering, which may never occur.  This claim is frivolous for a litany of reasons.  To begin, Plaintiffs lack standing to bring any claim relating to an unannounced, hypothetical initial public offering based on what Rivian may or may not disclose to investors at the time of that hypothetical public offering, assuming that such an offering ever occurs.  Further, even if Plaintiffs had standing, their injunctive relief claim is contingent on numerous hypothetical future events that may never occur, which render it unripe for adjudication.  And even if Plaintiffs had standing and the claim was ripe, it is not a proper claim but rather a proposed remedy that is not tethered to a legally cognizable claim.  Lastly, several other incurable defects render Plaintiffs' second claim legally invalid.

Second, Plaintiffs' Complaint was filed for an improper purpose.  Plaintiffs filed their Complaint anonymously in violation of Federal Rule of Civil Procedure 10.  And instead of serving it on Rivian, Plaintiffs used the threat of service and public press releases to pressure Rivian to engage in settlement discussions.  After filing the Complaint, Plaintiffs contacted Rivian's marketing personnel directly to initiate settlement discussions.  Upon being notified by Rivian's outside counsel that Rivian was represented, Plaintiffs' counsel requested a call between counsel.  Minutes before the call, Plaintiffs' counsel sent Rivian's counsel a proposed "Stipulation to Certify the Class for Settlement Purposes" and requested that Rivian sign it.  Rivian declined.

On the call, Plaintiffs' counsel introduced his "Director of Litigation," who, in response to Rivian's counsel's explanation of the bases for Rivian's anticipated motion to dismiss, raised his voice and angrily chastised Rivian's counsel for refusing to engage in settlement discussions and having the gall to explain why Plaintiffs' claims were baseless.  He then exclaimed that this case was like other cases worth "billions of dollars," such as the "Ford and Toyota IPO cases."

-2-

Plaintiffs' counsel and the Director of Litigation (who, despite his title is not a licensed attorney) then threatened to immediately issue a press release announcing the Class Action Complaint unless Rivian engaged in settlement discussions.

Immediately following the call, Plaintiffs' counsel emailed Rivian's counsel and again attempted to pressure Rivian's counsel to participate in settlement discussions by making a series of additional threats, including:

- "Please understand that we will be sure to let your client know by way of the Press Releases that, in our opinion, you have turned down our settlement proposal solely to increase your billable hours, and we will suggest that Rivian get new Defense Counsel to save them lots of money."

- "If you have lied to Rivian about your anticipated 12b motion, that will be an interesting issue to cover during the Rule 26 filing and meeting under the crime-fraud exception to the attorney-client privilege."

- "We suggest you discuss with your client that this case has the potential to destroy their IPO, and maybe then you might consider our offer."

- "[W]e would like to advise you that we will be filing a related individual whistleblower case which would have been discussed had you been interested in our settlement proposal."

Through the Complaint and counsel's actions to date, Plaintiffs have made clear that they did not file their anonymous class action lawsuit asserting legally baseless claims to redress a violation of law or injury in fact.  To the contrary, Plaintiffs filed their Complaint as part of a misguided strategy to extract a settlement payment from Rivian through various threats while at the same time shielding themselves from public identification.  This improper conduct violates Rule 11 and Rivian respectfully requests that the Court sanction Plaintiffs and their

-3-

1    counsel.

2    **II.    STATEMENT OF FACTS**

3        **A.    Plaintiffs File Their Frivolous Complaint Against Rivian**

4        On May 29, 2020, Plaintiffs filed their "Class Action Complaint." (ECF

5    No. 1 ["Compl."].)   Plaintiffs are "John Roe," "Jane Roe" and "John Roe II,"

6    anonymous, unidentified individuals who purport to represent a nationwide class

7    of similarly situated people.   Plaintiffs filed the Complaint under pseudonyms

8    because they allegedly "have serious, legitimate reasons for filing this as a Roe

9    Action and withholding their true identities from the Defendants until the Court

10   can issue a Confidentiality and Protective Order." (Compl. ¶ 2.)

11       Plaintiffs' Complaint asserts two purported claims against Rivian: (1) Fraud

12   by Concealment and (2) Stay of Defendant Rivian's Public Offering Until Known

13   Defects Are Made Publicly Available to Any and All Potential Investors or

14   Purchasers of Stock.   Plaintiffs allege that John Roe and Jane Roe "made a

15   $1,000.00 deposit to Rivian to hold a place in line for selection and purchase of

16   the type of vehicle of their choosing (*see* Rivian.com website)."   (*Id*. ¶ 6.)

17   Plaintiffs do **not** allege that John Roe II made a deposit.

18       All of Plaintiffs' substantive allegations are limited to one paragraph with

19   subparts.  Plaintiffs allege that after making their deposits, John Roe and Jane Roe

20   "learned that there are many serious defects in the prototype vehicles, including

21   but not limited to 'thermal events' ('thermal events' are incidents in which

22   defective components in the vehicles being developed . . . result in fires in the

23   battery system, a major component of each type of vehicle . . . ), along with other

24   defects, including structural defects relating to these vehicle's framework, and

25   defects relating to wiring systems." (*Id*. ¶ 6(c).)  Plaintiffs allege that the "events

26   and defects are a public safety hazard." (*Id*.)   Plaintiffs also allege that their

27   counsel has found "35 articles on the vehicles Rivian intends to offer to the public

28   . . . none of which disclose these safety defects." (*Id*.)  Plaintiffs then allege that

-4-

MEMORANDUM OF POINTS AND AUTHORITIES

they would not have made their deposits had the "serious Public Safety defects" in the prototype test vehicles been disclosed on Rivian's "webpages or other various advertising materials . . . ." (*Id.*)  Plaintiffs seek economic, noneconomic and punitive damages in connection with their purported claims.

Plaintiffs allege that "John Roe II has personal knowledge of those Public safety issues, and has made Defendant Rivian, Plaintiffs and Putative Class Counsel aware of them . . . ." (*Id.* ¶ 6(e).)

In connection with Plaintiffs' fraud by concealment claim, Plaintiffs seek to represent a class of "All Members of the Public, Nationwide, who saw advertisements of Defendant Rivian and then made a $1,000.00 deposit to Rivian to hold their place for the purchase of a vehicle . . . ." (*Id.* ¶ 12.)

While Plaintiffs cite to and incorporate the Rivian website through which they allegedly made the deposit (*id.* ¶ 6), Plaintiffs omit the actual terms of those deposits.  Of particular note, the deposits are **entirely refundable**.  Rivian's website provides:

> Note: To complete your preorder of a R1T or R1S, we require a refundable deposit of $1,000 (USD) at the time of your submission (the 'preorder fee').  This preorder fee will be applied to the balance owed on the Final Sales Agreement between us.
>
> You may cancel your preorder at any time by contacting us at preorders@rivian.com and expressing your decision to withdraw.  We will process your decision and promptly refund you the full deposit amount ($1,000) via wire transfer to your financial institution.
>
> For further information, please see the Terms and Conditions link on the bottom of this page.

(Declaration of Michael D. Mortenson ("Mortenson Decl."), Ex. 1.)  The Rivian Terms and Conditions contain more information about the deposit, including, but not limited to, the following terms and disclosures:

> <u>Cancellation/Refund</u>.  You can cancel your Pre-Order and receive a full refund at any time by sending an email to <u>preorders@rivian.com</u> from the address you use to make the preorder.   You will receive your refund within approximately 3 business days. . . .

(*Id.*, Ex. 8.)  The Terms and Conditions also make it clear that the depositor has no obligation to actually purchase a vehicle in the future and that the deposit does not constitute an agreement for the sale of a vehicle:

> You are under no obligation to purchase a Vehicle from us, and we are under no obligation to supply you with a Vehicle. . . .
>
> These Terms do not constitute an agreement for the sale of a Vehicle and do not lock in pricing, a firm production slot, a firm delivery date, or specific Vehicle configuration.

(*Id.*)  Lastly, among other terms, the Terms and Conditions notify the depositor, and the depositor acknowledges, that vehicles are still in development:

> <u>Vehicle  Configuration  and  Battery  Range</u>.   **You understand  that  we  may  not  have  completed  the development** of the Vehicle or begun manufacturing the Vehicle  at  the  time  of  your  Pre-Order.    You  further understand  that  the  Vehicle's  battery  range  and  other available  features  at  the  starting  price  have  not  yet  been determined.   By agreeing to these Terms, you represent and warranty to us that you understand that the Vehicle configuration  may  change  prior  to  execution  of  the  Final Sales Agreement.

(*Id.*) (emphasis added).

Simply put, any person that placed a deposit acknowledged that the vehicles have not been built and are still being developed, and that the future delivery dates and vehicle specifications are uncertain and subject to change.  The agreement also made clear **that any person placing a deposit could obtain a full refund at any time**.  Notably, Plaintiffs do not allege that they attempted to obtain a refund, obtained a refund or were somehow denied a refund.

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs also allege that "Rivian has publicly announced plans to undergo an Initial Public Offering (hereinafter 'IPO') of corporate stock to various Public and Investment Firms permitting purchase of its corporate stock. The advertisements and websites concerning the IPO do not inform the possible stock purchasers of any serious Public Safety Defects." (Compl. ¶ 6(f).)  Plaintiffs allege that "Based on publicly available information, Defendant Rivian has published its intent to conduct its IPO without any disclosure of the serious Public Safety issues and Defects described herein." (*Id*. ¶ 21.)  Plaintiffs allege that "John Roe 2, has direct knowledge of these defects . . . ." (*Id*.)

Plaintiffs "ask the Court for a Stay on the IPO of Defendant Rivian's sale of Defendant Rivian's corporate stock, as well as the solicitation and/or acceptance of any other type of investment from any private or public entity prior to Defendant Rivian's full disclosure of the defects, and a statement of any and all known defects pertaining to the performance and safety of its vehicles, and how these defects shall be corrected." (*Id*.)  Plaintiffs also ask the Court to "issue an order that Rivian disclose to the media and on their website any and all new defects while further developing its line of vehicles, as well as Rivian's ongoing efforts to identify and correct any defects, and all false advertising." (*Id*. ¶ 22.)

Finally, Plaintiffs seek to represent a nationwide class of similarly situated individuals, but Plaintiffs do not allege any of the facts required under Local Rules 23-2 through 23-2.2.  Plaintiffs assert that their claims may be worth "as much as one billion dollars ($1,000,000,000.00)[,]" but have failed to provide any reasonable support to justify the alleged damage amount. (*Id*. ¶ 12.)

**B.     Plaintiffs Attempt To Coerce Rivian Into Settling The Lawsuit Before The Complaint Is Served By Threatening Rivian And Its Counsel**

After the Complaint was filed, and in response to Plaintiffs' counsel's direct contact with Rivian, Rivian's counsel contacted Plaintiffs' counsel to inform him

-7-

1   that Rivian had retained counsel and that he should refrain from contacting Rivian

2   directly. In response to Rivian's counsel's e-mail, Plaintiffs' counsel requested a

3   teleconference.  Rivian's counsel agreed, and the parties set a call for 11:00 a.m.

4   on June 12, 2020.  (Mortenson Decl. ¶ 3.)

5        Shortly before the call on June 12, 2020, Plaintiffs' counsel sent an e-mail

6   to Rivian's counsel stating: "Please have a look at the attached stipulation that will

7   be the basis of today's phone call."  (Mortenson Decl., ¶ 4, Ex. 3.)  The stipulation

8   was entitled "STIPULATION FOR LIMITED CLASS CERTIFICATION FOR

9   SETTLEMENT ONLY."  (*Id*., Ex. 4)

10       Counsel for both sides conducted the call.  After discussing Plaintiffs'

11  failure to serve the Complaint, Plaintiffs' counsel introduced Dr. Steven Davis,

12  Plaintiffs' counsel's "Director of Litigation" and "Product Liability Expert," who

13  raised the issue of stipulating to class certification to settle the case.  (*Id*. ¶ 5.)

14  Notably, Dr. Davis does not appear to be a licensed lawyer.  In response to Dr.

15  Davis, Rivian's counsel politely explained that Rivian was not interested in

16  settlement discussions because Plaintiffs' claims are completely meritless and,

17  therefore, Rivian would not stipulate to class certification.  Rivian's counsel then

18  explained the deficiencies in the Complaint and grounds for the anticipated Federal

19  Rule of Civil Procedure 12 motion once the Complaint is served.  (*Id*. ¶ 6.)   At

20  that point, Dr. Davis cut-off Rivian's counsel and shouted that Rivian's counsel

21  must not be aware of the "Ford IPO and Toyota IPO cases" and that this case, like

22  those, is worth "billions" of dollars.  (*Id*. ¶ 7.)  Dr. Davis and Plaintiffs' counsel

23  then indicated that if Rivian was not going to engage in settlement discussions,

24  they would be issuing a press release and serving the Complaint.  The call then

25  ended.  (*Id*.)

26       Soon after the call ended, Plaintiffs' counsel sent an e-mail containing

27  additional threats against Rivian and its counsel, presumably to pressure Rivian's

28  counsel to discuss settlement of the baseless claims. (*Id*. ¶ 8, Ex. 5.)   Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES

first indicated that they were going to issue a press release and accused Rivian's counsel of defrauding Rivian:

> Please understand that we will be sure to let your client know by way of the Press Releases that, in our opinion, you have turned down our settlement proposal solely to increase your billable hours, and we will suggest that Rivian get new Defense Counsel to save them lots of money.

(*Id.*)  Plaintiffs next accused Rivian's counsel of lying to their client and engaging in some unexplained "crime-fraud," which they threatened to expose to the Court:

> If you have lied to Rivian about your anticipated 12b motion, that will be an interesting issue to cover during the Rule 26 filing and meeting under the crime-fraud exception to the attorney-client privilege.

(*Id.*)  Consistent with the comments during the call, Plaintiffs then again tried to persuade Rivian to settle by indicating that the lawsuit will harm its (unplanned) initial public offering:

> We suggest you discuss with your client that this case has the potential to destroy their IPO, and maybe then you might consider our offer.

(*Id.*)  Lastly, Plaintiffs' counsel indicated that they will be filing a whistleblower lawsuit against Rivian unless Rivian discussed settlement:

> [W]e would like to advise you that we will be filing a related individual whistleblower case which would have been discussed had you been interested in our settlement proposal.

(*Id.*)

Rivian's counsel promptly responded to Plaintiffs' e-mail to summarize the parties' call and their understanding of Plaintiffs' position. (*Id.* ¶ 9, Ex. 6.)  Several weeks later, after still not being served and after not seeing the threatened press release, Rivian's counsel again reached out to Plaintiffs' counsel to understand

-9-

MEMORANDUM OF POINTS AND AUTHORITIES

whether Plaintiffs' counsel was going to serve the Complaint or dismiss it, but received no response.  (*Id.* ¶ 10, Ex. 7.)

To date, Plaintiffs have not responded to Rivian's counsel's June 15, 2020 or June 30, 2020 e-mails.

## III.  ARGUMENT

### A.    Legal Standard Under Federal Rule of Civil Procedure 11

"Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3).  "Rule 11 is intended to deter baseless filings in district court and imposes a duty of reasonable inquiry so that anything filed with the court is well grounded in fact, legally tenable, and not interposed for any improper purpose." *Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 872 (9th Cir. 2014) (internal quotation marks omitted).

MEMORANDUM OF POINTS AND AUTHORITIES

Rule 11 also contains a safe harbor provision.   *See* Fed. R. Civ. P. 11(c)(2). Under it, "Rule 11 sanctions may not be imposed if the challenged claim is withdrawn within 21 days after service of the sanctions motion." *Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010) (citing Fed. R. Civ. P. 11(c)(2)).  The purpose of this provision is to provide "protection against sanctions if [litigants] withdraw or correct contentions after a potential violation is called to their attention."   Fed. R. Civ. P. 11 Advisory Committee Notes.

## B.   The Court Should Issue Sanctions Because Plaintiffs' Claims Are Frivolous

Plaintiffs and their counsel should be sanctioned because their claims in the Complaint are legally and factually baseless.

"Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127 (citation omitted).   "[T]he mere existence of one non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions."  *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).  Here, Plaintiffs' claims fail both prongs of this inquiry.

First, and as detailed in Rivian's Motion to Dismiss, Plaintiffs' claims are meritless.  As to the first claim for fraud by concealment, Plaintiffs' claims are premised on allegations that Rivian failed to disclose defects in its prototype vehicles at the time deposits were made.  However, no allegation is made that John Roe II has made a deposit.  (*See* Compl. ¶ 6 [alleging that only John Roe and Jane Roe made deposits]; *see also* Mortenson Decl., ¶ 8, Ex. 5 [admitting that only John Roe and Jane Roe made deposits].)  Without a deposit, John Roe II could not have been defrauded, suffered no injury and lacks standing to bring claims based on a deposit he never made. *See George v. United States*, No. CV1606221 MWFJPRX,

-11-

1   2017 WL 8229294, at *4 (C.D. Cal. Sept. 28, 2017) (Fitzgerald, J.) ("To establish

2   the jurisdictional element of standing, 'a plaintiff must show an injury that is

3   concrete, particularized and actual or imminent (the injury-in-fact requirement);

4   traceable to the defendant's complained-of activity (the traceability requirement);

5   and likely to be redressed by a decision favorable to plaintiff (the redressability

6   requirement).'")

7           John Roe and Jane Roe's claims are similarly infirm.  Although they allege

8   that they made deposits, they acknowledged at the time they made the fully

9   refundable deposits that the vehicles were not fully developed.  Plaintiffs made

10  this acknowledgement with good reason—to this day Rivian's vehicles are still

11  being developed, and Rivian has not sold or delivered a single vehicle to anyone.

12  Thus, Plaintiffs did not make a deposit on, much less purchase, any vehicle

13  containing an undisclosed defect.  Instead, John Roe and Jane Roe merely placed

14  a deposit to reserve a place in line to purchase a vehicle at a future date.  As a

15  result, John Roe and Jane Roe lack standing because they have not suffered any

16  injury.  *See George*, 2017 WL 8229294, at *4.  And any claim suggesting that the

17  vehicles may have defects once fully developed and sold is speculative,

18  hypothetical and not ripe for adjudication.  *See, e.g., Texas v. United States*, 523

19  U.S. 296, 300 (1998) ("The ripeness doctrine demands that litigants state a claim

20  on which relief can be granted and that litigants' asserted harm is 'direct and

21  immediate' rather than speculative or hypothetical.").

22          In addition to standing and ripeness issues, Plaintiffs do not, and cannot,

23  plead facts sufficient to state any claim for fraud because they fail to plead a defect

24  (*see, e.g.*, *Yagman v. Gen. Motors Co.*, No. CV-14-4696-MWF AGRX, 2014 WL

25  4177295, at *3 (C.D. Cal. Aug. 22, 2014)), fail to plead any duty to disclose the

26  alleged defect (*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir.

27  2012)), and fail to plead justifiable reliance regarding the prototype vehicles (*IV*

28  *Sols., Inc. v. United HealthCare Servs., Inc.*, No. CV169598MWFAGRX, 2017

1  WL 6372488, at *9 (C.D. Cal. Sept. 27, 2017)).  Moreover, the claim is barred by

2  the economic loss rule.  *See, e.g.*, *Mosqueda v. Am. Honda Motor Co., Inc.*, No.

3  SACV19839MWF, 2020 WL 1698710, at *12 (C.D. Cal. Mar. 6, 2020)

4  (dismissing concealment claims based on economic loss rule).

5          Plaintiffs' second claim for injunctive relief to stay the initial public offering

6  is also legally and factually unavailing.  As a threshold matter, Rivian has not

7  announced an initial public offering date, and may never announce one.  Thus,

8  Plaintiffs' claim is based entirely on their own unfounded suspicion that some

9  future hypothetical non-disclosure might take place before a hypothetical initial

10  public offering date, which may never occur.  Adding to the absurdity of this claim

11  is that none of the Plaintiffs claim to be current or prospective investors.

12  Consequently, Plaintiffs have no standing, and their claim is not ripe for

13  adjudication.  *See George*, 2017 WL 8229294, at *4.

14          Plaintiffs also cannot possibly plead a claim for injunctive relief to stay a

15  hypothetical future event.  Indeed, this is not even a valid claim as a matter of law;

16  it is a remedy.  *See, e.g.*, *Griffin v. Green Tree Servicing, LLC*, No. CV149408

17  MWFVBKX, 2016 WL 6782763, at *9 (C.D. Cal. Feb. 5, 2016) (Fitzgerald, J.)

18  (holding that injunctive relief is not a valid claim).    Further, Plaintiffs' claim

19  suffers from the same defects as their fraud by concealment claim but is even more

20  speculative as it concerns hypothetical future non-disclosures.    Additionally,

21  Plaintiffs cannot seek any kind of injunctive relief because there is no risk of future

22  harm and they will have an adequate remedy at law assuming they have standing.

23  *See Villanueva v. Am. Honda Motor Co*., No. CV191390MWFMAAX, 2019 WL

24  8112467, at *13–14 (C.D. Cal. Oct. 10, 2019) (dismissing prayer for injunctive

25  relief because there was no risk of future harm); *Madrigal v. Hint, Inc.*, No.

26  CV1702095VAPJCX, 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017)

27  (granting motion to dismiss because "Plaintiff's argument that she has

28  no adequate remedy at law in lieu of injunctive relief is unavailing.").

-13-

MEMORANDUM OF POINTS AND AUTHORITIES

Second, the Complaint makes clear that Plaintiffs' counsel did not conduct a cursory inquiry (let alone a competent inquiry) before bringing these claims. Had Plaintiffs' counsel conducted a competent inquiry, he would have quickly discovered that John Roe II has not even made a deposit and therefore was not defrauded and lacks standing to bring the fraud by concealment claim. Moreover, Plaintiffs' counsel would have quickly discovered that the deposits John Roe and Jane Roe allegedly made are fully refundable, and that when they made the deposits, John Roe and Jane Roe acknowledged and understood the vehicles were still in development.

Likewise, any competent inquiry would have educated Plaintiffs' counsel that the second claim asserted is not actually a claim but a remedy that is not tethered to a valid, legally cognizable claim. *See, e.g.*, *Griffin*, 2016 WL 6782763, at *9. Plaintiffs' counsel would have also learned that his clients lack standing to bring claims for injunctive relief based on an unannounced, hypothetical initial public offering that may never occur. *See, e.g., George*, 2017 WL 8229294, at *4. Even further, a competent inquiry would have confirmed that this claim is not ripe since there is no initial public offering pending or imminent and Rivian has not announced any plans to go public. *See, e.g., Texas*, 523 U.S. at 300.

In sum, Plaintiffs' claims are frivolous for myriad reasons. Plaintiffs' counsel either failed to conduct a competent inquiry before filing these claims or, even worse, ignored the results of the inquiry and decided to file suit anyway in an attempt to extract a quick settlement.

## C.    Plaintiffs' Complaint Was Presented For An Improper Purpose

Considering the frivolousness of the claims, the fact that Plaintiffs improperly filed their suit anonymously, and the improper actions taken to try and coerce a settlement, it is evident that Plaintiffs' Complaint was filed for an improper purpose.

MEMORANDUM OF POINTS AND AUTHORITIES

"Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). Thus, "[t]he less factual and legal merit to a pleading or motion, the more likely the court will *infer* it was filed for an improper purpose, particularly if it has caused unnecessary delay and expense to other parties." Rule 11, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 17-B, 17:349.

In addition to filing a frivolous claim, "improper purposes" under Rule 11 include: (1) "negotiating [a] settlement, not in the court room, but in the media" (*Kramer v. Tribe*, 156 F.R.D. 96, 109 (D.N.J. 1994), *aff'd* 52 F.3d 315 (3d Cir. 1995)); (2) "threaten[ing] [] adversaries with meritless harassing lawsuits" if they don't settle (*id.*); (3) "the absence of any reasonable support for [a] damage claim" (*Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1162 (9th Cir. 1987)); and (4) "intentional use of publicity for the *purpose of embarrassing an adversary*" (*Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003)), among other things. Direct evidence of an attorney's bad faith, including "where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*," will also support findings of improper purpose. *In re Itel Securities Litig.*, 791 F.2d 672, 675 (9th Cir. 1986).

In *Kramer*, for example, the court found that an attorney acted with an improper purpose where he employed an "extortionate strategy" of bringing a frivolous lawsuit against an opponent and then threatening to "go to the press and ruin [his opponent's] reputation and provide damaging information" about his opponent to others in order to "dragoon a settlement." 156 F.R.D. at 99, 110. In awarding Rule 11 sanctions, the court noted that "[t]his kind of conduct cannot be tolerated from a practicing attorney." *Id.* at 110. The court also decried "practicing attorneys [who] are utilizing the media to publicize their cases as a

-15-

litigation tactic[,]" warning that "[t]his must stop if the integrity of the judicial enterprise is to be preserved." *Id.*

Plaintiffs' counsel's conduct here is similar to the sanctionable conduct in *Kramer*.   After requesting a teleconference with Rivian's counsel, Plaintiffs' counsel made a variety of threats after Rivian indicated that it was not interested in discussing settlement, would not stipulate to class certification, and would be moving to dismiss the legally infirm Complaint.  Among other threats, Plaintiffs' counsel and his Director of Litigation threatened to immediately issue a press release unless Rivian reconsidered its position and engaged in settlement discussions.

Making matters worse, Plaintiffs' counsel then followed-up the call with an e-mail that again threatened Rivian and its counsel. (Mortenson Decl., ¶ 8, Ex. 5.) As to Rivian, Plaintiffs' counsel reiterated his threat to issue the press release, and that the lawsuit would "destroy" Rivian's IPO. (*Id.*)   Plaintiffs' counsel also indicated that he planned to file a whistleblower lawsuit against Rivian.  (*Id.*)  As to Rivian's counsel, Plaintiffs' counsel claimed that the press release would suggest to Rivian that Rivian's counsel "turned down our settlement proposal solely to increase [Rivian's counsel's] billable hours, and we will suggest that Rivian get new Defense Counsel to save them lots of money."  (*Id.*)  Plaintiffs' counsel also suggested that Rivian's counsel was engaged in some kind of "crime-fraud," apparently by lying to Rivian about the anticipated Rule 12 motion, and that Plaintiffs would raise it with the Court "during the Rule 26 conference." (*Id.*)

Rivian's counsel responded by e-mail, but Plaintiffs' counsel never responded.  (*Id*. ¶ 9, Ex. 6.)   Several weeks later, Rivian's counsel sent another email inquiring whether Plaintiffs intended to serve the Complaint or if they would dismiss it, but Plaintiffs' counsel did not respond.  (*Id.* ¶ 10, Ex. 7.) To date, it does not appear that Plaintiffs' counsel has issued or published  the threatened press release.

MEMORANDUM OF POINTS AND AUTHORITIES

**D.     The Court Should Sanction Plaintiffs and Plaintiffs' Counsel For The Amount Of Attorneys' Fees Rivian Expended**

"In a case like this, where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993).  Rivian respectfully requests that the Court award sanctions in the amount of the attorneys' fees Rivian reasonably incurred in defending against Plaintiffs' frivolous claims. Rivian further requests the opportunity to provide further briefing on the amount and reasonableness of the sanction award.

## IV.   CONCLUSION

Based on the foregoing, Plaintiffs and their counsel filed frivolous claims against Rivian for an improper purpose.  Upon being served with the instant Motion, Plaintiffs refused to withdraw their Complaint.  As a result, the Court should issue sanctions against Plaintiffs and Plaintiffs' counsel in amount that covers Rivian's legal fees incurred in defending against Plaintiffs' frivolous claims.

DATED:  July 21, 2020            MORTENSON TAGGART LLP

                                By: */s/Michael D. Mortenson*
                                      Michael D. Mortenson
                                      Craig A. Taggart
                                      Attorneys for Defendant
                                      RIVIAN AUTOMOTIVE, LLC

MEMORANDUM OF POINTS AND AUTHORITIES